IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-02017-RBJ

DALVIR SINGH RANI,

   Petitioner,

v.

WILLIAM P. BARR, Attorney General of the United States,

   Respondent.

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

Petitioner Dalvir Singh Rani, a native and citizen of India, is in the custody of the federal government awaiting his removal from the United States at an immigration detention center in Aurora, Colorado. This matter is before the Court on the amended *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* ("Amended Application") filed *pro se* by Petitioner challenging his custody. (ECF No. 11.) On August 13, 2019, the Court ordered Respondent William P. Barr (referred to as "the Government") to show cause why the application should not be granted. (ECF No. 12.) On September 12, 2019, the Government filed a *Response to Order to Show Cause*. (ECF No. 17.) On October 11, 2019, Mr. Rani filed *Petitioner's Traverse to Respondent's Reply to 28 U.S.C. § 2241*. (ECF No. 18.)

The Court must construe the application and other papers filed by Petitioner liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S.

519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110. For the reasons discussed below, the Court concludes the Amended Application should be denied.

**I.     BACKGROUND**

The pertinent facts are undisputed. Petitioner Dalvir Singh Rani is a native and citizen of India. (Decl. of Michael Ketels, ECF No. 17-1 at ¶ 2.) He first entered the United States at a border-crossing with Mexico in November of 2010. (Ketels Decl. ¶ 2.) On December 21, 2010, the Department of Homeland Security issued a Notice to Appear (NTA) which commenced removal proceedings against Petitioner because he was alleged to have entered the United States without a valid visa, reentry permit, border crossing identification card, or other valid entry document. (*Id.* ¶ 3.) He was granted bond on December 23, 2010, pending a final decision in the removal proceedings. (*Id.* ¶ 4.) On February 9, 2012, Petitioner appeared before an immigration judge (IJ) and conceded the charge in the NTA. (*Id.* ¶ 7.) Instead of contesting the allegations in the NTA, it appears that Petitioner applied for relief from removal. (*Id.*) Neither side explains the final disposition of those proceedings nor what occurred between February of 2012 and June of 2017.

But both parties agree that on June 14, 2017, Petitioner was convicted of one count of Assault with a Deadly Weapon in the Superior Court of California, County of Fresno. (*Id.* ¶ 8; ECF No. 18 at 2.) As a result, Petitioner was sentenced to two years in prison. (*Id.*) On January 25, 2018, after serving his sentence, and upon being released

from state prison, immigration officials detained Petitioner to proceed with removal as required under § 1227(a)(2)(A)(iii) (providing that the Attorney General "shall take into custody any alien who" is removable as an aggravated felon). (Ketels Decl. ¶ 9.)

On February 15, 2018, Petitioner appeared before an IJ with counsel, but counsel withdrew from the case the same day. (*Id.* ¶ 10.) A status conference was then held on March 7, 2018. (*Id.* ¶ 11.) The IJ held an individual merits hearing on Petitioner's applications for relief from removal on April 2, 2018. (*Id.* ¶ 12.) That hearing was continued for completion of testimony until April 16, 2018. (*Id.*) According to the Government, the April 16th hearing was continued again "due to the Petitioner's belated, extensive filing of documents in support of his claim for relief." (*Id.* ¶ 13.) Then, on May 2, 2018, the IJ completed the individual hearing, denied Petitioner's requests for relief from removal, and ordered him removed from the United States to India. (*Id.* ¶ 14.)

Petitioner appealed to the Board of Immigration Appeals (BIA). (*Id.* ¶ 15.) He was scheduled to file a brief with the BIA, but requested an extension of time to do so on July 20, 2018. (*Id.* ¶ 17.) That request was granted with the Petitioner's brief deadline extended. (*Id.*) Petitioner filed a second request for extension of time to file his brief on August 6, 2018, which the BIA denied. (*Id.* ¶ 18.) On October 5, 2018, the BIA dismissed Petitioner's appeal and denied his motion to remand the matter. (*Id.* ¶ 20.)

On April 12, 2019, Petitioner commenced this habeas action in the United States District Court for the Northern District of California. (ECF No. 1.) Because Petitioner is held at the Aurora Contract Detention facility in Aurora, Colorado, the case was transferred to this Court on July 12, 2019. (ECF Nos. 6, 7.) The Court issued an *Order*

*Directing Petitioner to Cure Deficiencies* on July 12, 2019. (ECF No. 10.) He cured the identified deficiencies by submitting an amended habeas application on the court-approved form. (ECF No. 11.)

Petitioner's Amended Application asserts a single claim, presenting the following issue: "Whether [Petitioner] an alien who is detained during an immigration proceeding may challenge the constitutionality of the statutory framework that permits the detention without bail through [a] habeas corpus petition." (*Id.* at 2.) As relief, Petitioner requests "that the Court grant him release in [the] form of parole and order [a] bail hearing pending [the] decision on his habeas corpus petition." (*Id.* at 4.) The Court will now turn to the claim.

## II.   DISCUSSION

The Court has jurisdiction under 28 U.S.C. § 2241 to consider Petitioner's "constitutional challenge to the legislation authorizing his detention without bail[.]" *Demore v. Kim*, 538 U.S. 510, 517 (2003). The Court begins with an overview of the statutory authority to detain removable aliens followed by an analysis of Petitioner's due process challenge to his detention without bail.

   *1.  Statutory authority to detain.*

Detention of aliens within the United States is governed by 8 U.S.C. § 1226 and 8 U.S.C. § 1231. Section 1226 grants authority to detain aliens before entry of a final removal order and § 1231 authorizes detention during the "removal period," which commences after entry of a final order of removal. The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). Here, Petitioner's removal order become administratively final on October 5, 2018, when the BIA dismissed his appeal. 8 U.S.C. § 1231(a)(1)(B)(i). The removal order has not been judicially reviewed and Petitioner has not been released from detention or confinement—thus, subsections (ii) and (iii) do not apply. This means that Petitioner's current detention is governed by § 1231, with the removal period beginning on October 5, 2018.

### 2. Continued detention—due process challenge.

The Court now addresses Petitioner's contention that his continued detention—which totals twenty months—violates due process. (ECF No. 11 at 2.) The Government responds to Petitioner's claim by citing *Zadvydas v. Davis*, 533 U.S. 678 (2001). (ECF No. 17 at 2-3.) It argues that Petitioner has been detained under § 1231 since the removal order became final on October 5, 2018—amounting to fourteen months of removal period detention. (*Id.*) Further, says the Government, Petitioner does not meet his burden under *Zadvydas* to "show 'that there is no significant likelihood of removal in the reasonably foreseeable future'" and asserts, instead, that "travel documents have been issued to [Petitioner.]" (*Id.* at 3 (citing *Zadvydas*).) In his traverse, Petitioner responds that removal is "not imminent." (ECF No. 18 at 15.) He argues that he "is still being held at the Aurora Detention facility and has not been provided any updates or

5

given a new date when he is going to be removed." (*Id.*) He contends that "[t]he government cannot just make these arguments and not follow through on them." (*Id.*)

*Zadvydas* controls the outcome in this case. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore*, 538 U.S. at 523 (internal quotation marks omitted). It is equally clear that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. In *Zadvydas*, the Supreme Court held that six months is a presumptively reasonable period under the Due Process Clause for detention during the removal period (the period after a removal order has become final, but before the individual has been removed). *Zadvydas*, 533 U.S. at 701. After six months, if "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing[.]" *Id.*

Of primary importance in this case, Petitioner does not provide good reason to believe this case involves his indefinite or potentially permanent detention. He simply relies on the length of his detention as the basis for relief. Yet the Tenth Circuit has explained, "[a]lthough [Petitioner] has been detained for longer than six months, that fact standing alone does not mean he must now be released." *Abiodun v. Mukasey*, 264 F. App'x 726, 729 (10th Cir. 2008) (unpublished) (upholding continued detention where alien remained in federal custody awaiting removal for three years). "Unlike the aliens in *Zadvydas*—who faced indefinite detention because their countries of origin would not accept them—there has been no showing [Petitioner] will not be accepted by his

6

homeland of [India.]" *Id.*; *cf. Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1124 (10th Cir. 2005) (finding removal not reasonably foreseeable, and habeas relief warranted, where Cuba refused to accept the petitioner and the United States was no longer even involved in repatriation negotiations with Cuba). In fact, the Government here presents evidence to establish that India will accept Petitioner and has issued him travel documents. "Under these circumstances, [Petitioner's] detention is not indefinite." *Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (unpublished) (finding no indication that petitioner was unremovable "[w]hether it be for lack of a repatriation agreement or because his designated country will not accept him."). To be sure, the Government's protracted efforts to complete removal is no cause for praise. But the detention in question has not yet exceeded "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. Therefore, Petitioner's due process challenge fails at this time.

       *3. Additional claims challenging detention without bond.*

  Insofar as Petitioner attempts to challenge the statutory framework providing for his detention without bond (as opposed to the above-discussed application to him), the claim is subject to dismissal pursuant to Rules 2(c)(1) and 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner fails to provide particular factual allegations to support a claim.[1] (*See generally* ECF No. 11.) Habeas corpus rules are more demanding than the rules applicable to ordinary civil

---

1 A "district court may apply any or all of these rules to a habeas corpus petition not covered by [§ 2254.]" Rule 1(b), Rules Governing Section 2254 Cases in the United States District Courts.

actions, which require only notice pleading. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). Naked allegations of constitutional violations are not cognizable in a habeas corpus action. *See Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (per curiam). Thus, any such claim is dismissed without prejudice.

Finally, Petitioner, in his traverse, argues that the agency's process for periodic custody redetermination review violates due process because the decisions were made "without giving him an opportunity to provide information in support of his release[.]" (ECF No. 18 at 6-10, 8.) Because Petitioner failed to include such a claim in his Amended Application (or his initial application), it too is subject to dismissal pursuant to Rules 2(c)(1) and 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts as there are not particular factual allegations to support a claim. *See also Jordan v. Wiley*, 411 F. App'x 201, 212, n.9 (10th Cir. 2011) (unpublished) ("We will not consider an issue raised for the first time in a traverse because it was not properly before the district court[.]"). Accordingly, any such claim is also dismissed without prejudice. [2]

## III.  CONCLUSION

For the foregoing reasons, the amended *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241* (ECF No. 11) is **denied and dismissed** as stated herein.

---

2 Even if the claim were properly before the Court, Petitioner's request for an order that he be released from custody on bond would, in essence, overrule the Attorney General's decision to hold Petitioner in custody while he awaits removal. But the agency's discretionary decision with respect to the grant or denial of bond is not reviewable in this Court. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review."). The Tenth Circuit has confirmed that "to the extent [the petitioner] challenges the agency's discretionary bond decision . . . the court lack[s] jurisdiction" pursuant to § 1226(e). *Mwangi*, 465 F. App'x at 787; *Pelletier v. United States*, 653 F. App'x 618, 622 (10th Cir. 2016) (unpublished) (same).

Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Petitioner files a notice of appeal, he also must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED December 6, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge